BARBARA BENNETT v. EASTERN REBUILDERS, INC.

No. 805DC940

(Filed 16 June 1981)

**Master and Servant § 10— termination of employment contract—breach of contract—damages**

In an action for an injunction ordering defendant to re-employ plaintiff and for back pay from the date of plaintiff's discharge from employment with defendant, the trial court properly determined that defendant breached its agreement with plaintiff that, should she be terminated from her position as supervisor, such termination would not result in plaintiff's discharge from defendant's employ but would result in her demotion to her former job as a lead person on defendant's production line, and plaintiff was entitled to damages proximately resulting from defendant's failure to return her to her position as a lead person; however, because plaintiff failed to produce evidence

of the monetary loss she suffered as a result of defendant's breach, and failed to establish that her reinstatement as a lead person would necessarily result in renewed union membership or entitlement under the union contract to a fixed term of employment or to be discharged only for cause, plaintiff was entitled only to nominal damages. Moreover, the trial court erred in entering an injunction ordering defendant to reinstate plaintiff as a lead person, since plaintiff showed no reason why money damages for breach of contract would not make her whole and since defendant could immediately discharge plaintiff without cause under her contract terminable at will, thus making issuance of the injunction futile.

APPEAL by defendant from *Rice, Judge.* Judgment entered 19 May 1980 in District Court, NEW HANOVER County. Heard in the Court of Appeals 7 April 1981.

This is an action seeking an injunction ordering defendant Eastern Rebuilders, Inc. to re-employ plaintiff, and for back pay from the date of plaintiff's discharge from employment with defendant. From a judgment for plaintiff, rendered by the trial court sitting as finder of fact, defendant appeals.

## PLAINTIFF'S EVIDENCE

Plaintiff was employed by defendant as a lead person on defendant's production line. This position was regulated by a union contract giving plaintiff substantial job security, including the right to union representation if her job was terminated. In 1975 defendant's agents, management personnel, offered plaintiff a position as a supervisor. Plaintiff refused to accept this position because as a supervisor she could no longer maintain her union status and would lose the job security such status provided. She offered to take the position if defendant would agree that she would not be fired if she did not work out as a supervisor, but would be demoted to her former position as a lead person. Defendant's agents agreed to plaintiff's proposal. In October of 1978 and again in January 1979, plaintiff was having difficulty discharging her duties as a supervisor and requested that she be demoted to her job as a lead person. She received no response to either request. On 2 February 1979, plaintiff's employment with defendant was terminated for low production. She was given no opportunity to return to her former position as a lead person.

DEFENDANT'S EVIDENCE

Two plant superintendents for defendant testified that they had discussed with plaintiff the possibility of her going back on her old job if she did not work out as a supervisor, but that they had only discussed it as a possibility, and had made no guarantees or promises. They testified that the company had no policy of guaranteeing that an employee would be demoted before he was fired. They informed plaintiff prior to 2 February 1979 that she would be terminated for low production and personnel problems. Plaintiff stated at that time that she would not be interested in going back to her old job and they did not offer her the opportunity to do so. Plaintiff did not have a contract of employment with defendant, and no company policy gives an employee the right to a definite fixed term of employment.

The trial court found as facts that defendant agreed to demote plaintiff to the position of lead person rather than fire her if her work as a supervisor were unsatisfactory, that but for defendant's agreement plaintiff would not have accepted the supervisor's position, that plaintiff requested to be returned to her former position, and that defendant fired plaintiff from its employ two weeks after this request. The court awarded plaintiff back pay from the date of her discharge and mandatorily enjoined defendant to re-employ plaintiff as a lead person or in some comparable position.

*James J. Wall for plaintiff appellee.*

*Burney, Burney, Barefoot & Bain by Roy C. Bain; and Adams, Fox, Marcus, Adelstein & Gerding by Randall L. Mitchell for defendant appellant.*

CLARK, Judge.

We believe an agreement between an employee and her employer concerning the manner in which her job could be terminated constitutes an enforceable agreement. Defendant argues that because the parties never agreed to a definite term of employment, plaintiff was terminable at will. We agree to the limited extent that we think defendant was free to discharge plaintiff from her supervisory position at any time.

"Where a contract of employment contains no provision concerning the duration or term of employment, *or the means by which it may be terminated,* it is terminable at the will of either party, with or without cause. *Still v. Lance,* 279 N.C. 254, 182 S.E. 2d 403 (1971); 5 N.C. Index 2d, Master and Servant, § 10, p. 327."

*Tatum v. Brown,* 29 N.C. App. 504, 505, 224 S.E. 2d 698, 698-99 (1976) (emphasis added). The issue in the case *sub judice* is not how long plaintiff must remain employed, but simply by what means her employment may be terminated. Under the agreement between plaintiff and defendant, she could be terminated from her position as supervisor at any time; however, such termination was to result not in her discharge from defendant's employ, but in her demotion to her former job on the line.

Ample consideration for defendant's bargained-for agreement to demote plaintiff rather than fire her may be found in her agreement to give up her union position and the job security that went with it. It is immaterial whether this "job security" under the union contract was sufficient to keep plaintiff in her former position despite an intention on defendant's part to fire her from it. It is clear from the record that plaintiff believed she was "almost guaranteed of having a job unless [she] stole something from the plant, or something like that." She stated further that in order to take the promotion she had to give up her union seniority and benefits. It was her belief that her job was secure that led her initially to refuse the promotion to supervisor. In order to allay her fears and induce her to take the position defendant's plant superintendents agreed to put her back in her former job if she proved unsatisfactory as a supervisor. Their failure to do this amounted to breach of their contract.

The law provides plaintiff with a remedy for this breach. She is entitled to damages proximately resulting from defendant's failure to return her to her position as a lead person. Plaintiff has failed, however, to produce evidence of the monetary loss she suffered as a result of defendant's breach, and we believe she is therefore entitled to no more than nominal damages. *Builder's Supply v. Midyette,* 274 N.C. 264, 162 S.E. 2d 507 (1968).

As defendant argues, plaintiff's employment as a lead person was for an indefinite period and at best terminable at will. *Smith*

*v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282, 79 A.L.R. 3d 651 (1976). Had she been returned to her former position, she would still have enjoyed employment at the will of her employer. To be entitled to compensatory damages she would have the burden of showing that she would have been retained in her former position for some period of time. For that period she would be entitled to compensation at the rate of a lead person, less any amounts she could have earned by other employment during that period. As an employee at will she was entitled to no specific period of employment; and defendant's decision to discharge her entirely from its employment evidences that had she been reinstated as a lead person, she would have been immediately fired. Her damages were thus coextensive with her entitlement to continued employment as a lead person; that is, none at all.

Plaintiff argues that the position as a lead person would have carried with it considerable job security, by virtue of the fact that when she was a lead person she was a union employee under a union contract. She has failed to establish that her reinstatement as a lead person would necessarily result in renewed union membership or entitlement under the union contract to a fixed term of employment or to be discharged only for cause. Plaintiff testified, and the trial court found, that plaintiff had job security before taking the supervisor's job. The relevant issue here, though, is what job security she would have after being returned to that position. It does not follow that she would have the same security. She testified that in order to take the supervisor's job she had to give up her union membership. Upon reinstating her, defendant would be free to terminate her employment before she had a chance to rejoin the union. The only evidence of plaintiff's job security was linked to her union membership, not her employment contract. After admitting that she gave up that membership, plaintiff had the burden of establishing that if she were returned to her lead position, she could again place herself under the penumbra of union protection *before* defendant could terminate her employment. This she failed to do. We hold plaintiff's evidence of damages is too speculative to support the trial court's award of back pay from the date of discharge until trial. Her entitlement under the evidence is to no more than nominal damages.

In addition to damages, plaintiff obtained a mandatory injunction ordering defendant to reinstate her as a lead person. We hold

that this injunction was improvidently entered. Plaintiff has established her entitlement to a remedy at law: damages for breach of contract. Her difficulties are based not on the inadequacy of the legal remedy, but on the inadequacy of her proof at trial. She has shown no reason why money damages for breach could not make her whole. Far from the "irreparable harm" that she alleged in her complaint, her evidence at trial tended to show no damage. "An injury is irreparable, within the law of injunctions, where it is of a 'peculiar nature, so that compensation in money cannot atone for it.' *Gause v. Perkins*, 56 N.C. 177 (1857)." *Frink v. Board of Transportation*, 27 N.C. App. 207, 209, 218 S.E. 2d 713, 714 (1975). Plaintiff's only loss has been whatever wages she would have earned had she been reinstated as a lead person terminable at the will of her employer. For these wages she could be adequately compensated in money damages had she met her burden of establishing the proper amount of such damages.

We note, too, that the issuance of the injunction would be futile, since defendant could immediately discharge plaintiff without cause under her contract terminable at will. This Court will not require the doing of a vain and futile thing. *Nolan v. Nolan*, 45 N.C. App. 163, 262 S.E. 2d 719 (1980).

The judgment of the trial court that defendant is liable to plaintiff for breach of contract is affirmed. That portion of the judgment awarding back pay and enjoining defendant to rehire plaintiff is vacated and the case remanded for an award of nominal damages.

Affirmed in part; vacated in part.

Judges VAUGHN and WELLS concur.